IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

BETHANY MOFFETT, NEXT FRIEND
AND GUARDIAN OF D. T., A MINOR                                         PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 2:08cv21KS-MTP

JONES COUNTY, MISSISSIPPI SCHOOL BOARD,
AND JONES COUNTY SCHOOL DISTRICT                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion for Summary Judgment **[# 34]** filed on behalf of the defendants. The court, having reviewed the motion, the response, the pleadings and exhibits on file, the briefs of counsel, the authorities cited and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

In the Fall of 2006, D.T. was a second grade student at Sharon Elementary School, which is in the Jones County School District (JCSD). He had previously been evaluated by JCSD and was under an Individualized Education Plan (IEP) concerning his speech when he started the second grade. No complaints had been raised by the plaintiff, Moffett, or anyone else regarding D.T.'s IEP prior to the Fall of 2006.

Shortly after the 2006 school year started, JCSD alleges that D.T. began exhibiting behavioral problems at school and was being disruptive in class, which

required several calls by the faculty and staff to Moffett.[1] These events culminated in Moffett admitting D.T. into Pine Grove Mental Health in Hattiesburg on August 14, 2006, via the emergency department of Forrest General Hospital, for approximately one week of in-patient treatment. Once released, D.T. returned to school at Sharon Elementary, but apparently continued to exhibit behavioral problems and was disruptive in class. This behavior resulted in the staff at Sharon Elementary having to contact Moffett on several occasions to pick D.T. up from school early.

In late September of 2006, the IEP Committee at Sharon Elementary and Moffett agreed that D.T.'s IEP needed to be re-evaluated. This evaluation took place in October of 2006 and by October 24, 2006, a determination was made to change D.T.'s IEP to address an emotional disability. Procedures were then put in place by JCSD and Sharon Elementary to address these changes to D.T.'s IEP.

On October 3, 2006, D.T. was again being disruptive in class, crying and was also ill. The faculty and staff at Sharon Elementary contacted Moffett several times that morning to advise her of this. D.T.'s disruptive behavior escalated to the point he was removed from his classroom and placed in a separate classroom with two instructors who made numerous attempts to calm him down, including trying to get him to participate in a project where they created a treasure map. To create this map, one of D.T.s teachers burned the edges of a poster board.

At approximately 1:15 p.m., Moffett was again contacted, this time by Robert Hill, the Principal of Sharon Elementary, who advised her of what was going on and

---

[1] The plaintiff does not disagree with the statement of facts set forth by the defendants.

requesting she come to the school. When Moffett arrived, Hill accompanied her to the classroom where D.T. was. When they arrived to this classroom, D.T. was sitting at a table, crying. Moffett took D.T. to South Central Regional Medical Center for examination and then home.

Moffett testified that when she arrived to pick up D.T., she met with Robert Hill and went to get D.T. from a classroom. As she approached the classroom, she smelled smoke and ran to the room, opening the door to discover a smokey room and a child sitting at a table with burnt matches and a candle. The two adults in the room were not sitting or standing near D.T., and appeared unconcerned. Moffett took D.T. to the South Central Regional Medical Center for medical treatment which the records indicate was for an asthmatic condition. The plaintiff asserts that these records and those of Pine Belt support her theory that D.T. continues to fear fire and show classic indicia of severe psychological trauma, such as bed wetting and night terrors. However, the plaintiff has provided no expert to support these assertions and such are not established merely by a review of the records.

At some point in September of 2006, unbeknown to the defendants, Moffett had contacted the Mississippi Protection & Advocacy System (MPAS) in Jackson, Mississippi, to request assistance in dealing with D.T.'s IEP. An advocate with MPAS, Shelley Blankenship, contacted JCSD advising of Moffett's request for assistance. Per Ms. Blankenship's request (and with the plaintiff's permission), JCSD provided MPAS with a copy of D.T.'s records and scheduled a meeting on November 29, 2006 with the IEP Committee and Moffett to discuss D.T.'s IEP. This meeting was held on November 29, 2006, at which an agreement was reached, to the satisfaction of Moffett and Ms.

Blankenship, regarding how Sharon Elementary would carry out the administration of D.T.'s IEP. After this meeting, no further complaints were raised by Moffett, Ms. Blankenship, any representative of MPAS or anyone else to the defendants regarding D.T.'s IEP.

The plaintiff, Moffett, subsequently filed her Complaint in this cause, both individually and on behalf of her minor child, D.T. alleging that the defendants violated the Individuals with Disabilities Education Act (IDEA), 42 U.S.C. 1400, *et seq.*, by failing to provide D.T. with an adequate Individualized Education Plan, and also alleging negligence claims against the defendants on her behalf and on behalf of D.T., pursuant to the Mississippi Tort Claims Act (MTCA), MISS. CODE ANN. §11-46-1, *et seq.* She is seeking damages pursuant to 42 U.S.C. § 1983 for alleged personal injuries suffered as a result of the alleged negligence of the defendants and seeking attorneys fees under 42 U.S.C. § 1988.

The defendants assert that they are entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and a complete dismissal with prejudice of all of the plaintiffs' claims because (1) the plaintiffs failed to exhaust their administrative remedies which are a prerequisite to advancing the IDEA claim; (2) the plaintiffs have failed to establish how the IEP the defendants had in place for D.T. was inadequate or improper; (3) the defendants have discretionary immunity pursuant to MISS. CODE ANN. § 11-46-9(1)(d); (4) Moffett has no basis for any tort claim against the defendants, as the defendants neither owed nor breached any duty to Moffett; and (5) the plaintiffs have failed to establish any causal connection between any alleged act or omission of the defendants and any personal injury they are claiming.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one

of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting*

*Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **IDEA and FEDERAL CLAIMS**

The IDEA and its predecessors were enacted in response to the failure of public schools to provide meaningful education to children whose disabilities prevented them from succeeding in the usual classroom environment. The heart of the IDEA, and the first of its stated purposes listed in the statute, is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §1400(d)(1)(A).

It has been long held that the IDEA does not guarantee the best educational placement a child might be afforded, but that he be provided with a "basic floor of

opportunity that will permit him 'to benefit' from the instruction." *Adam J. v. Keller Independent School Dist.*, 328 F.3d 804, 808 (5th Cir. 2003)(citations omitted.) The IDEA demands that a child be educated as far as possible within a "regular" classroom setting, *Id.* at 810, and requires that the child be educated in the "the least restrictive environment;" that is, the least segregated, and the least divergent from that provided to a non-disabled student. 20 U.S.C. §1412(a)(5)(A).

The IDEA requires states to establish "procedural safeguards," i.e., administrative remedies, including an opportunity for parents to present complaints and to request a due process hearing. 20 U.S.C. §1415(a). Mississippi has done so through Miss. Code Ann. §37-23-143(1), which provides;

> When any public agency directly responsible for the education of children with disabilities initiates or refuses to initiate or change the identification, evaluation, or educational placement of the child or the provisions of a free appropriate public education to the child, the parent of a child with a disability or the agency shall have the opportunity to request a state-level impartial due process hearing.

Miss. Code An. §37-23-143(2), in turn, places the responsibility of promulgating "rules and regulations consistent with the requirements under IDEA to establish a system for the provision of state-level impartial due process hearings" with the Mississippi Deparment of Education ("MDE"). The Mississippi Department of Education has followed this directive and promulgated "Procedural Safeguards: Due Process Procedures for Parents and Children" ("the safeguards"). The safeguards explain the process for requesting an impartial due process hearing and an explanation of the procedural aspects of such hearings. Exhaustion of these remedies is required before resort to suit in federal court is permitted.

The purpose of the Rehabilitation Act of 1973 is to develop and implement

comprehensive and coordinated programs of vocational rehabilitation and independent living. To facilitate this purpose, the Act provides for federal funding of state programs creating and maintaining various vocational rehabilitation services. Further, 29 U.S.C. § 794, provides in pertinent part:

> No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a).

A private right action has long been recognized as the means of enforcing the provisions of § 504. *See Helms v. McDaniel*, 657 F.2d 800 (5th Cir.1981). Federal courts have concluded that there are few differences in the affirmative duty set forth under the IDEA and the negative prohibition against discrimination set forth in § 504,

> . . . the requirements imposed by § 504 of the Rehabilitation Act substantially duplicate those provided under the IDEA. *W.B. v. Matula*, 67 F.3d 484, 492–493 (3rd Cir.1995) (noting that "[t]here appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition")(partially abrogated on the finding that § 1983 was available to remedy alleged violations of the IDEA or the Rehabilitation Act - *A.W. v. Jersey City Public Schools*, 486 F.3d 791 (3rd Cir. 2007)). Section 504 of the Rehabilitation Act prohibits any federally funded program from discriminating against persons with disabilities. To this extent, § 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). To establish a violation of § 504, the plaintiffs must establish that: (1) [the student] has a disability; (2) [the student] is "otherwise qualified" to participate in school activities; (3) [the school] receives federal financial assistance; and (4) [the student] was excluded from participation in, denied the benefits of, or subject to discrimination at school. *W.B. v. Matula*, 67 F.3d at 492 (citations omitted).

The plaintiffs have also alleged unspecified violations of § 1983. To maintain

such an action they must establish, the following:

 (a) that the defendants were acting under color of state law, and

 (b) that while acting under color or state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984). However, neither states nor officials of the state sued in their official capacity are amenable to suit under 42 U.S.C. § 1983 because they are not considered "persons" within the meaning of the statute. "We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The *Will* Court went on to state;

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, (citation omitted), or unless Congress has exercised its undoubted power under §5 of the Fourteenth Amendment to override that immunity.

491 U.S. at 66.

There is no allegation of the required exhaustion of administrative remedies or the waiver of Eleventh Amendment Immunity by the plaintiffs and the defendants have asserted that the plaintiffs' failure to exhaust and/or to show a waiver is fatal to their federal claims. In fact, the plaintiffs have conceded that the "IDEA claims that are based on the content and existence of D.T.'s IEP cannot be sustained." Judgment in favor of the defendants on these claims is thus appropriate.

## **NEGLIGENCE CLAIMS**

The only remaining issue, according to the plaintiffs, is the negligence of the defendants in their alleged failure to provide a safe school environment to D.T., together with a free and appropriate public education (FAPE). Interestingly, the plaintiffs seem to contend that they have a negligence claim under the auspices of the IDEA and/or some other Federal law in addition to their state law negligence claims. However, the plaintiffs cite no authority that the IDEA, the Rehabilitation Act of 1973 or any other Federal law provides the plaintiffs with any cause of action or right to relief under Federal law, based upon the facts alleged. Thus, any claim of negligence under federal law must be dismissed.

The plaintiffs have both alleged state law tort claims against the defendants, seeking recovery for personal injuries for which they claim are causally related to allegedly negligent conduct of the defendants. Specifically, the plaintiffs claim that because of the incident of October 3, 2006, D.T. suffered an asthma attack (allegedly due to smoke inhalation), a worsening of his asthma, nightmares about fire and bed wetting. Moffett is also apparently attempting to maintain a tort claim against the defendants in her own right, as she alleges she has suffered an increased rate of seizures and has been ordered to limit her duties as a bounty hunter – all as a result of the allegedly negligent conduct of the defendants.

The defendants contend that they are entitled to summary judgment on these claims asserting (1) discretionary function immunity pursuant to MISS. CODE ANN. § 11-46-9(1)(d); (2) the defendants neither owed nor breached any duty to Moffett; and (3) the plaintiffs cannot establish any causal connection between their alleged injuries and

any alleged act or omission of the defendants.

There is no dispute that the defendants are political subdivisions as defined by the MTCA, thus are privileged with the immunities provided by the MTCA, which provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

MISS. CODE ANN. § 11-46-9(1)(d).

"When an official is required to use his own judgment or discretion in performing a duty, that duty is discretionary." *Harris v. McCray*, 867 So.2d 188, ¶ 12 (Miss. 2003). In this case, the teachers instructing D.T. on October 3, 2006, chose the project of constructing a treasure map in an effort to calm D.T. down. The court agrees with the defendants that the method in which they chose to run their classroom on the day in question must be considered discretionary. Accordingly, the defendants are entitled to immunity under the MTCA as to all of the plaintiffs' alleged negligence claims.

Additionally, the plaintiffs have failed to establish a primary part of their negligence claims. The plaintiffs do not dispute the elements required to establish their *prima facie* negligence claim against the defendants: duty, breach of duty, causation and damages. *Loft v. Purvis*, 3 So.2d 789 (Miss.App. 2009). The plaintiffs have not designated any medical experts who will offer testimony that any of the psychological problems allegedly suffered by D.T. were causally related to the few seconds the match was lit in his presence on October 3, 2006.

The only evidence the plaintiffs provide to support their claim that D.T. suffered any type of injury associated with the match incident is D.T.'s records from Pine Belt Mental Healthcare Resources. All these thirty-four pages of records indicate is that D.T. underwent counseling. They do not establish that he suffered any psychological injury as a result of the alleged incident of October 3, 2006. The records are not certified by the facility nor sworn in any way, thus they are inadmissible to support the plaintiffs' causation element. *See Hickox by Hickox v. Holleman*, 502 So.2d 626, 637 (Miss. 1987) (holding that medical records that were not certified as required by Miss. CODE ANN. 41-9-101 to 119 were inadmissible); *see also* Miss. CODE ANN. § 41-9-101 to 119 (setting forth the certification procedures required to allow medical and hospital records to be admissible).

The records contain no information that the psychological injuries allegedly suffered by D.T. were in any way causally related to the match incident. There is nothing in the records produced by the plaintiffs about the match incident or that any of the problems D.T. was experiencing were due to the match incident. Additionally, the records indicate that D.T. had psychological issues prior to the match incident of October 3, 2006. The records from Forrest General Hospital/Pine Grove Mental Health indicate that D.T. was admitted from August 14 to August 21, 2006, approximately six (6) weeks before the October 3, 2006, match incident, for various psychological and behavioral issues, including but not limited to setting fires and bed wetting. To survive summary judgment, in the absence of immunity, the plaintiffs must offer evidence that the alleged breach of duty by the defendants was the proximate cause of D.T.'s alleged psychological injuries. *See McIntosh v. Victoria Corp.*, 877 So.2d 519, 523 (Miss.App.

2004). This they have failed to do.

Finally, the plaintiffs contend Moffett has suffered "enormous emotional distress" as a result of the match incident involving her son. They have submitted eleven pages of medical records of Moffett which the plaintiffs contend are evidence of this alleged emotional distress. However, the plaintiffs have not articulated any legal duty owed by the defendants to Moffett as she was not a student at Sharon Elementary. Furthermore, Moffett was not present when the match incident took place, thereby negating any damages she may be claiming as a bystander. *See Summers ex. reI Dawson v. Sf. Andrews' Episcopal School, Inc.*, 759 So.2d 1203, 1209-10 (Miss. 2000). The plaintiffs have not come forward with any legal authority establishing how the defendants owed Moffett any legal duty concerning the match incident, thus her negligence claim fails the duty prong.

Additionally, the plaintiffs fail to present any competent evidence that Moffett's alleged emotional distress or any other physical injury or condition suffered by Moffett is causally connected to the match incident. There is no mention in the records produced by Moffett of the match incident or that any problem complained of by Moffett in these records is causally related to the match incident. The plaintiffs have not designated any expert witnesses who will link any emotional or physical problem Moffett allegedly suffered to this match incident. Thus, since the plaintiffs have no competent evidence causally connecting any alleged physical or emotional injury of Moffett to the match incident, her negligence claim against the defendants must fail as well. Therefore, apart from the immunity the defendants are entitled to, the plaintiffs have wholly failed to present a *prima facie* case of negligence on behalf of either of the plaintiffs against

these defendants.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment **[# 34]** is Granted and the plaintiffs' complaint is dismissed with prejudice and that all other pending motions are denied as moot. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 1st day of June, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE